Lee Kerschner, Ph.D., Commissioner Colorado Commission on Higher Education 1550 Lincoln Street, Room 210 Denver, Colorado 80203
Dear Dr. Kerschner:
QUESTIONS PRESENTED AND CONCLUSIONS
You have requested an attorney general's opinion on the constitutionality of Senate bill 398 (C.R.S. 1973, 23-3.5-101et seq.) with special attention to be paid to the following questions:
1. The Act provides state funded financial aid to students enrolled in nonpublic Colorado institutions of higher education. Is such aid permissible under the constitution?
 My conclusion is that, although the question is not free from doubt, the bill appears to be constitutional.
2. The Act sets forth criteria for determining if an institution is "pervasively sectarian." Are these criteria appropriate and sufficient?
 My conclusion is that the language is probably sufficient to withstand constitutional attack.
ANALYSIS
This opinion is limited to institutions of higher education, which have been treated differently from elementary and secondary education institutions in the case law. See, e.g.,Tilton v. Richardson, 403 U.S. 672 (1971). Senate bill 398 authorizes the Colorado Commission of Higher Education to establish a grant program to Colorado in-state students at Colorado institutions of higher education. The commission determines the institutions eligible for participation in the grant program, and the eligible institutions recommend students for receipt of grants. Disbursements are handled by the institutions subject to a biannual audit and review by the state auditor. Students attending theological or pervasively sectarian institutions are not entitled to benefits under Senate bill 398.
It is difficult to comment on the facial constitutionality of Senate bill 358, since all of the relevant case law utilizes particularized factual analysis. Thus, in one factual situation, a court may weigh the nature of the institution disbursing the aid, the method of disbursement, whether or not an audit procedure is employed, and other factors in determining the constitutionality of the aid.
In examining the facial constitutionality of Senate bill 398, it is necessary at the outset to consider the provisions of theFirst Amendment to the U.S. Constitution. It is also necessary to review the provisions of section 34, article V and section 7, article IX of the Colorado Constitution.
The First Amendment, made applicable to the states by theFourteenth Amendment, Murdock v. Pennsylvania, 319 U.S. 105
(1943), forbids a state from enacting "a law respecting the establishment of religion." The United States Supreme Court in its recent decisions reviewing state statutes attacked upon establishment clause grounds has used a tripartite test initially set forth in Lemon v. Kurtzman, 403 U.S. 602 (1971). Under this test a state law which provides for aid to religious schools, or students attending religious schools, must: 1. reflect a clearly secular purpose, 2. have a primary effect that neither advances nor inhibits religion, and 3. avoid excessive state entanglement with religion. Lemon v. Kurtzmansupra; Committee for Public Education v. Nyquist,413 U.S. 756 (1973); Hunt v. McNair, 413 U.S. 734
(1973); Roemer v. Maryland Public Works Board, 426 U.S. 736
(1976); Wolman v. Water, 97 S.Ct. 2593 (1977).
To fall within the strictures of the establishment clause, the state statute must first reflect a clearly secular purpose. In examining an enactment with this guideline in mind, the Supreme Court has looked to the legislative statement of purpose and to the class of individuals or institutions which will benefit from the law. Hunt v. McNair, supra. In applying the second guideline, relating to the primary effect of the law, the Supreme Court has reviewed the religious character of the institutions benefitted and determined whether they are so pervasively sectarian that secular activities cannot be separated from sectarian activities. If such separation is possible, the statute must provide an effective means of assuring that only the secular activities will be funded. Hunt v. McNair, supra;Committee for Public Education v. Nyquist, supra; Roemer v. Maryland,supra. In considering the third guideline, the likelihood that the law will lead to excessive state entanglement with religion, the Supreme Court has looked to the religious character of the affected institutions, the nature of the aid provided (neutral v. ideological) and the resulting relationship between the state and the religious institutions. Lemon v.Kurtzman, supra; Tilton v. Richardson,supra; Hunt v. McNair, supra.
Applying the first prong of the tripartite test to Senate bill 398, it is appropriate to examine the legislative purpose of the statute and the composition of the class benefitted. In enacting this law, the legislature stated:
 23-3.5-101. Legislative declaration. The general assembly hereby declares that it is the policy of this state, within appropriations available for such purpose, to provide assistance to Colorado in-state students attending institutions of higher education, by utilizing federal and other monies available for such purpose.
The benefits of the law are available to all Colorado in-state students attending public and nonpublic institutions of higher education which are neither theological nor pervasively sectarian. The Supreme Court has consistently held that a statute enacted to provide needy students with the opportunity to attend institutions of their choice reflects a secular purpose, especially when the state aid is available to students attending public as well as private schools. Board of Education v.Allen, 392 U.S. 236 (1968); Hunt v. McNair, supra;Roemer v. Maryland Public Works Board, supra; Committee forPublic Education v. Nyquist, supra; Lemon v. Kurtzman,supra; Wolman v. Water, supra. Therefore, it is clear that Senate bill 398 meets the first of the three guidelines outlined in Lemon v. Kurtzman, supra.
In applying the second guideline to state legislation providing for aid to private institutions, the Supreme Court, as stated above, has considered the extent to which religion has permeated the institutions involved. However, the aid provided by Senate bill 398 is not direct institutional aid. The money is disbursed to the student who may use it, apparently, for any educationally related expense. There is no Supreme Court decision dealing directly with the issue of whether such aid meets the primary effect test; however, a U.S. District Court has recently held that a Tennessee statute which provides for the disbursement of general scholarship funds to college students without regard to the type of institution they attend does not have the primary effect of either advancing or inhibiting religion. AmericansUnited for the Separation of Church and State v. Blanton,433 F. Supp. 97 (DC Tenn. 1977), U.S. Supreme Court appeal pending. The Supreme Court has been more prone to uphold statutes which provide aid directly to students rather than to religious institutions. Americans United for the Separation of Churchand State v. Blanton, supra, citing Eversonv. Board of Education, 330 U.S. 1; Board of Educationv. Allen, supra, and Meek v.Pittenger, 421 U.S. 349 (1975). The only case invalidating such aid, Committee for Public Education v.Nyquist, supra, involved a statute which provided for the payment of funds predominantly to one religious group attending primary and secondary schools which the court determined to be pervasively sectarian. It is for these reasons that the Nyquist decision was distinguished by the court in Blanton and is distinguishable here.
Further support for the Blanton decision may be found in the recent case of Wolman v. Water, supra, where the Supreme Court, in commenting on the G. I. Bill, stated:
 If religious schools indirectly derive benefit from such programs, this benefit is entirely incidental and subordinate to the legitimate secular purposes underlying their enactment.
Senate bill 398 contains an additional important protection not found in the legislation invalidated in Nyquist or in the legislation upheld in Blanton: it provides for aid only to those students attending nonpublic institutions of higher education which are neither theological nor pervasively sectarian. The criteria set forth in section 104 of the law for determining whether an institution is pervasively sectarian are in accord with the criteria set forth by the Supreme Court in its decisions regarding this matter. See Hunt v. McNair,supra; Committee for Public Education v.Nyquist, supra; Roemer v. Board of PublicWorks of State of Maryland, supra; Tilton v.Richardson, supra.
Although the authority on this particular issue is limited, in view of the above, it is my opinion that Senate bill 398's provision of aid to all Colorado in-state students attending public and nonpublic institutions of higher education which are neither theological nor pervasively sectarian does not have the primary effect of either advancing or inhibiting religion.
The third guideline to be considered relates to the likelihood that the law will lead to excessive state entanglement with religion. As the court found in Blanton, the fact that there is no secular use restriction placed upon the funds which flow from the student to the institution, which might require excessive monitoring by the state, assures that there is no impermissible entanglement. Senate bill 398 avoids any such state monitoring role. It is therefore my opinion that Senate bill 398 meets the tests of constitutionality established by the Supreme Court and is valid under the First Amendment.
The first Colorado constitutional provision which must be examined in this analysis is section 34 of article V which provides:
 No appropriation shall be made for charitable, industrial, educational or benevolent purposes to any person, corporation or community not under the absolute control of the state, nor to any denominational or sectarian institution or association.
The grants disbursed under Senate bill 398 are to be paid to students, and therefore, the prohibitions relating to corporations, communities, institutions and associations do not apply according to their own terms. However, it is always possible that grants to individual students, even though not earmarked for payment to educational institutions, might nonetheless be viewed as indirect aid to the institutions, since, as a practical matter, grants under Senate bill 398 are intended to permit students to attend educational institutions who otherwise would be unable to do so, and the institutions presumably benefit from the increased enrollment.
It is also necessary to determine whether the provisions of Senate bill 398 authorize an appropriation to "any person . . . not under the absolute control of the state," in violation of section 34 of article V. This particular language was construed by the Colorado Supreme Court in Bedford v. White,106 Colo. 439, 106 P.2d 469 (1940). In determining whether a state statute providing for the payment of pensions to former state judges was in violation of such provision, the court held that if the payments were for a public purpose, the incidental fact that the recipients were private persons did not violate this constitutional provision. This is a narrow holding and may not stand for any broader authority. However, section 2a of article XI of the Colorado Constitution, which became effective on January 11, 1973, provides specific authority for the establishment of a student loan program. Thus, the constitution itself recognizes the public purpose inherent in student aid, and the student grant program enacted by Senate bill 398 should enjoy the same status. In conclusion, if the grants are not attributed to educational institutions and the criteria set forth inBedford are used for determining the public nature of funding, it is my opinion that Senate bill 398 is not in conflict with section 34 of article V.
The second Colorado constitutional provision which must be applied is section 7 of article IX, prohibiting the payment of any monies in aid of any church or sectarian society or for any sectarian purpose or to help sustain or support any institution controlled by any church or sectarian denomination. It must be noted that the operative phrase used in this constitutional provision is "sectarian" which has a much broader sweep than the "pervasively sectarian or theological" language of Senate bill 398. In People v. Stanley, 81 Colo. 276, 287,255 P. 610 (1927), the Colorado Supreme Court construed the word "sectarian" as it appears in this constitutional provision as follows:
 Sectarian meant, to the members of the convention and to the electors who voted for and against the Constitution "pertaining to someone of the various religious sects" and the purpose of said section 7 was to forestall public support of institutions controlled by such sects.
Whether "sectarian" would now be defined as "pervasively sectarian" by the courts is an open question. However, in view of the very strict language used in section 7 of article IX, and its use of "sectarian" without modification, it is possible that a court might find the law in violation of this section of the constitution. In the recent past, the Colorado Supreme Court has taken a very strict view of the separation of church and state. See General Conference, Church of God v. Carper,557 P.2d 832 (Colo. 1976), where the court rejected any analysis of the benefits given to the people of Colorado by a religious institution. It may be significant here that the disbursement of funds is, as noted above, to the students and not to the institutions themselves.
In interpreting the language "in aid of" and "for a sectarian purpose," courts' response to similar questions has been as follows: The U.S. Supreme Court has consistently held, sinceEverson v. Board of Education, 330 U.S. 1 (1946), that financial aid to needy students allowing them to attend the institutions of their choice is aid for a secular, not a sectarian, purpose. The Supreme Court has also continuously held in its decisions under the establishment clause that the aid to religious institutions prohibited by the constitution is direct aid and not indirect, incidental or remote aid. Board ofEducation v. Allen, supra, p. 244; Hunt v. McNair, supra, p. 742; Meek v. Pittenger, supra, p. 359; Roemer v. Maryland PublicWorks Board, supra, p. 747.
SUMMARY
In accordance with these decisions, it is reasonable to conclude that the aid prohibited by section 7 of article IX is also direct aid, and the incidental benefits which may be derived by religiously affiliated and not pervasively sectarian institutions attended by students receiving grants under this law are not of sufficient dimension to violate the provisions of said section.
Accordingly, although the question seems clear as a matter of federal constitutional law, it seems considerably less clear as a matter of Colorado constitutional law. However, because of the normal presumption of constitutionality which attaches to any statute, I cannot say that Senate bill 398 is unconstitutional. Thus, there is no legal impediment to implementation of the student grant program, pending further review in the courts.
Very truly yours,
 J.D. MacFARLANE Attorney General
EDUCATION, HIGHER CONSTITUTIONAL AMENDMENTS RELIGIONS
C.R.S. 1973, 23-3.5-101 et seq.
Colo. Const. art. V, § 34
Colo. Const. art. IX, § 7
HIGHER EDUCATION, DEPT. OF Administration
Statute creating program of grants to students attending private colleges which are not pervasively sectarian or theological does not violate federal establishment clause and probably does not contravene Colorado constitution.